UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

CESAR ARIZ,

                Plaintiff,

                      17cv4491

     -against-

                      OPINION & ORDER

METROPOLITAN TRANSPORTATION
AUTHORITY, *et al.*,

                Defendants.

---------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

       Plaintiff Cesar Ariz brings this employment discrimination action against Defendants Metropolitan Transportation Authority ("MTA") and MTA Police Department ("MTAPD") Deputy Inspector Gary Beahan (together, "Defendants"). Ariz claims that Defendants failed to promote him to detective, retaliated against him for discrimination complaints, and subjected him to a hostile work environment on the basis of race and national origin in violation of Title VII, 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants move for summary judgment dismissing all claims. For the reasons that follow, Defendants' motion is granted and this action is dismissed.

BACKGROUND

I.    Ariz's MTA Employment and Promotion Applications

       The MTAPD hired Ariz, a Hispanic man, as a police officer in 2002. (Pl.'s 56.1, ¶¶ 3–4.) In 2007, Ariz moved from patrol to the Applicant Investigation Unit ("AIU"), where he investigated candidates for police officer positions. (Pl.'s 56.1, ¶¶ 12–13.) On separate

occasions in 2012, 2015, and 2018, Ariz applied to be an MTAPD detective and was rejected. (Pl.'s 56.1, ¶¶ 20, 22, 24, 34, 39, 45.) Each time, Ariz's evaluators noted that some of his responses to situational questions seemed rehearsed and he missed crucial parts of the model answers. They also noted that Ariz had a disciplinary history of making false statements and needed more patrol experience before he could be promoted to detective. (See Pl.'s 56.1, ¶¶ 21, 28–31, 39, 43–44.)

II.     Ariz's Complaints and MTAPD's Administrative Changes

In January 2016, Ariz complained to the MTA's Department of Diversity and Civil Rights ("DDCR") that he was not being promoted because of national origin discrimination. (Pl.'s 56.1, ¶ 65.) In March 2016, he mentioned to his commanding officer that he believed his lack of promotion was "about [his] race." (Pl.'s 56.1, ¶ 71.) Ariz's commanding officer relayed that exchange to Beahan. (Pl.'s 56.1, ¶ 71.) Beahan did not learn of Ariz's DDCR complaint until April 28, 2016, when DDCR contacted him in connection with its investigation. (Pl.'s 56.1, ¶ 69.)

In the months surrounding Ariz's DDCR complaint, the MTAPD restructured its AIU. Specifically, (1) "at some point in 2015 to 2016," the MTAPD chief directed AIU to reduce its members' overtime hours; (2) in March 2016, MTAPD officers were invited to transfer into AIU and four police officers joined the unit in May 2016; and (3) in late April or May 2016, the entire AIU office was relocated and Ariz's cubicle was placed near Beahan's office. (Pl.'s 56.1, ¶¶ 83, 90, 94, 98.)

As a result of the reorganization, Ariz's supervisors reduced overtime opportunities in early 2016 for both Ariz and his only AIU coworker, a Caucasian woman. (Pl.'s 56.1, ¶¶ 84, 86, 87.) Between February and April of 2016, Ariz's commanding officer denied

several of Ariz's requests to attend overtime recruiting events, explaining that AIU matters were a higher priority. (See Pl.'s 56.1, ¶¶ 117, 119–124.) In addition, because recruitment and community overtime events were distributed among the newer AIU officers, Ariz worked fewer overtime hours and attended fewer community events. (Pl.'s 56.1, ¶¶ 107, 111.)

In March and April 2016, Ariz's commanding officer denied some of his requests to attend various training sessions, citing cost concerns and the programs' irrelevance to Ariz's investigatory role. (Pl.'s 56.1, ¶¶ 135, 137, 139.) Several of these requests were denied prior to the time that Ariz's commanding officer and Beahan learned of the DDCR complaint. (Pl.'s 56.1, ¶ 143.) Finally, Ariz contends that he was stripped of his "military liaison" title, even though there is no such title in the MTAPD. (Pl.'s 56.1, ¶¶ 102–104.)

III. Ariz's Recent Disciplinary History

Since 2016, Ariz has been the subject of three disciplinary proceedings. First, in August 2016, Ariz filed a false and untimely report concerning an accident he had in Times Square while driving an MTAPD radio motor patrol vehicle. (Pl.'s 56.1, ¶¶ 160–162.) After an investigation, Internal Affairs recommended that Ariz be disciplined. The MTAPD penalized Ariz with the loss of 30 vacation hours and a transfer from AIU to patrol. (Pl.'s 56.1, ¶¶ 163–166.) Second, in October 2017, Ariz and his patrol partner were disciplined for tampering with a security camera on a private storefront. When the storeowner confronted them, Ariz issued a criminal summons for disorderly conduct. Acting on a civilian complaint, Internal Affairs investigated and concluded that Ariz issued the summons improperly and then falsely reported the underlying facts of the incident. Internal Affairs recommended that Ariz be disciplined with the loss of 75 hours of compensation and vacation time. Ariz challenged that punishment in an arbitration and an independent arbitrator reduced the penalty to forty hours. (See Pl.'s 56.1,

¶¶ 176–181.) Third, in May 2018, while on sick leave, Ariz left his home without notifying the MTAPD and without having been granted "confinement relief status." The MTAPD issued a letter of instruction, which Ariz contends may be used against him in the future. (Pl.'s 56.1, ¶¶ 187–192.)

DISCUSSION

I.  Legal Standard

A court may grant a motion for summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to demonstrate "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted). Thus, on a motion for summary judgment, the court will "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party makes an initial showing that there is no triable issue of material fact, the nonmoving party bears the burden to "set out specific facts showing a genuine issue for trial" without merely relying on allegations or denials in the pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[C]onclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for

summary judgment . . . [and to] create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2009).

II. Federal and NYSHRL Claims

Ariz brings claims for discriminatory failure to promote, retaliation, and hostile work environment under Title VII and the NYSHRL, as well as a race discrimination claim pursuant to § 1981. He also brings aiding and abetting claims against Beahan individually. This Court analyzes Title VII and NYSHRL claims together because they require the same standard of proof. Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015). Depending on the factual circumstances, Hispanic ethnicity may give rise to discrimination claims based either on race or national origin. See Vill. of Freeport v. Barrella, 814 F.2d 594, 607 (2d Cir. 2016). However, in this case, where the analysis will be the same and Ariz himself conflates the two, this Court need not draw any analytical distinction.

  A. Failure to Promote

Ariz claims that the MTAPD did not promote him because he is a Hispanic man. On summary judgment, failure to promote claims under Title VII and NYSHRL adhere to the three-step framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008). First, a plaintiff must make a prima facie showing that: (1) he is a member of a protected class, (2) he applied for and was qualified for the job in question, (3) he was denied the job, and (4) he was "rejected under circumstances which give rise to an inference of unlawful discrimination." Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009) (citation and quotation marks omitted). In response, the defendant must rebut the plaintiff's prima facie case by "offer[ing] a legitimate non-discriminatory rationale for its actions." Aulicino, 580 F.3d at 80 (citation and quotation

marks omitted). The burden then shifts back to the plaintiff to produce evidence of pretext—namely, "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false." Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 91 (2d. Cir. 2016) (alteration in original) (citation and quotation marks omitted).

Ariz's failure to promote claim fails because he has not produced any evidence showing that his rejection occurred under circumstances suggesting discrimination. He concedes that he never heard anyone—supervisor or evaluator, including Beahan—make a negative remark about Hispanic people. (Pl.'s 56.1, ¶¶ 51, 56.) He relies almost entirely on promotion data for the period from 2007 to 2017, during which none of the 17 people promoted to detective were Hispanic men. But two Hispanic women were promoted within that time frame. (Pl.'s 56.1, ¶ 61.) Ariz's argument is flawed from its inception because a plaintiff may not fuse protected characteristics to carve out a narrower class of discrimination victims. See, e.g., Johnson v. Strive E. Harlem Emp. Grp., 990 F. Supp. 2d 435, 446 (S.D.N.Y. 2014) (analyzing a black female plaintiff's evidence of race- and gender-based discrimination separately); Skeete v. IVF Am., Inc., 972 F. Supp. 206, 210 (S.D.N.Y. 1997) (same).

Moreover, the sample size is too small to be probative. See Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 121 (2d Cir. 1997) ("The smaller the sample . . . the less persuasive the inference of discrimination to be drawn from it."); see also Vuona v. Merrill Lynch & Co., 919 F. Supp. 2d 359, 374 (S.D.N.Y. 2013) (finding a sample size of 28 people too small to infer any discrimination). Beyond these unpersuasive numbers, Ariz alludes to rumors of discrimination or unrelated MTAPD lawsuits which were settled or dismissed on summary judgment. This scant offering does not give rise to an inference of discrimination. See, e.g., Johnson v. N.Y. Univ., 2018 WL 4908108, at *2 (S.D.N.Y. Oct. 10, 2018) (dismissing

discrimination case where evidence of other lawsuits "[did not] shed[] light on whether a discriminatory motive existed in this case").

And even if Ariz could make a prima facie case, it is undisputed that his reviewers harbored many concerns about his interview performance and qualifications, and that they did not hold the same reservations for other people in the same application cycles. See Pl.'s 56.1, ¶¶ 36, 46; see also Chavis v. Wal-Mart Stores, Inc., 265 F. Supp. 3d 391, 409 (S.D.N.Y. 2017) (finding a legitimate non-retaliatory reason where "other candidates had more experience or outperformed [plaintiff] in areas relevant to the job qualifications"). In response, Ariz claims that he had more than enough years on the job for a promotion, and often more than his fellow applicants. Defendants assert that "experience" is not purely a question of time spent in a position—rather, "[s]ufficient patrol experience needed to be able to respond well to scenario questions in an interview . . . means learning about how to deal with various scenarios from the specific incidents [that the officer encountered]." (Defs.'s 56.1, ¶ 32.) Ariz's insistence that he had six years of patrol experience therefore does not create a material dispute of fact and does not rebut the legitimate reasons for the MTAPD's decision not to promote him. See Baity v. Kralik, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("speaking past Defendants' asserted facts without specifically controverting those same facts" does not create a triable issue). And while he contends that the interviews were only a formality with no real influence on promotion decisions, he offers no evidence for this assertion beyond his own deposition testimony.

Finally, as to the NYSHRL aiding and abetting claim against Beahan, no liability can attach in the absence of underlying discriminatory conduct. See Henderson v. Montefiore Med. Ctr., 2013 WL 1155421, at *7 (S.D.N.Y. Mar. 21, 2013). For all of the above reasons, Ariz's Title VII and NYSHRL failure to promote claims are dismissed.

B.  Retaliation

Ariz next contends that Defendants retaliated against him for his discrimination complaints—namely, his DDCR grievance and the filing of this lawsuit.  A plaintiff must establish a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Hicks, 593 F.3d at 165 (citation and quotation marks omitted).  After a plaintiff makes a prima facie case of retaliation, the defendant must articulate a non-retaliatory reason for the employment action.  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013).  The plaintiff must then produce evidence that the defendant's proffered explanation is mere pretext for actual discrimination.  Walsh, 828 F.3d at 91.

Here, Ariz details a wide-ranging litany of allegedly retaliatory behavior.  The only prong of the prima facie case that Ariz undisputedly satisfies is his participation in a protected activity.  See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (stating that a "protected activity" for retaliation purposes includes both formal litigation and "informal protests of discriminatory employment practices").

As a preliminary matter, several of the MTAPD's actions were not "adverse" as a matter of law.  An employment action is "adverse" if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  Ariz's relocation to a cubicle closer to Beahan, as part of a departmental move, had no apparent negative implications aside from Ariz's own subjective perceptions.  See Beyer v. Cty. of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) ("[W]e require a plaintiff to offer objective indicia of material disadvantage;

8

subjective, personal disappointment is not enough."). And it would be absurd for Ariz's "loss" of a non-existent title to give rise to a legal claim.

Turning next to the assorted rejections for some overtime hours, event attendance, and training sessions, "the evidence, taken as a whole, [does not] support[] a sufficient rational inference of discrimination such that a reasonable jury could find in the plaintiff's favor." Moy v. Perez, 2016 WL 5239611, at *2 (S.D.N.Y. Sept. 21, 2016) (alteration in original) (citation and quotations marks omitted). The parties do not dispute that most of these denials occurred before April 2016. Thus, Ariz effectively concedes that most of the actions in question transpired before the people responsible for those decisions—his commanding officer and Beahan—knew about his complaint. See Schibrat v. N.Y. State Hous. Fin. Agency, 1998 WL 118171, at *4 (S.D.N.Y. Mar. 13, 1998) ("Essential to a retaliation claim is that the employer knew about the protected activity prior to taking an adverse employment action." (emphasis added)). The fact that the pattern of rejections began before his supervisors learned about his protected activity, and then continued unabated afterwards, also casts doubt on any causal connection between these events and his DDCR complaint. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001). And in any event, the MTAPD's justifications for these decisions—the need to reduce costs for unnecessary event attendance, the desire to split the work evenly among old and new AIU members, and the fact that the trainings were unrelated to Ariz's position—have not been rebutted with any evidence of pretext.

Ariz's arguments connected to his assorted disciplinary actions are likewise insufficient to defeat summary judgment. First, regarding the discipline stemming from his August 2016 car accident, he fails to demonstrate causation. He relies only on temporal proximity to support an inference of retaliation. See Littlejohn v. City of N.Y., 795 F.3d 297,

9

319 (2d Cir. 2015) (a plaintiff may rely on temporal proximity between the protected activity and adverse action to establish causation at the prima facie stage). But his January 2016 DDCR complaint is too remote in time to infer causation. See Ray v. N.Y. State Ins. Fund, 2018 WL 3475467, at *11 (S.D.N.Y. July 18, 2018) ("The Second Circuit has declined to establish a 'bright line to define the outer limits beyond which a temporal relationship is too attenuated' . . . but a temporal gap of more than a few months will generally be insufficient to raise a plausible inference of causation without more . . . ." (quoting Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 254 (2d Cir. 2014)).

While Ariz also appears to connect this incident to an August 2016 EEOC complaint, that grievance is not in the summary judgment record. And irrespective of his prima facie case, it is undisputed that he falsely reported the incident in violation of MTA rules, and he has no evidence of pretext.[1] See Zann Kwan, 737 F.3d at 847 ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."). Next, as to the October 2017 storefront incident, Ariz appears to link his punishment to the filing of this lawsuit. But Ariz makes no attempt to explain how the two are connected. Further, Ariz's claim does not withstand the remainder of the McDonnell Douglas framework. A demonstration of employee misconduct satisfies a defendant's burden under the second step of McDonnell Douglas. See, e.g., Desardouin v. City of Rochester, 708 F.3d 102, 106 (2d Cir. 2013). To that end, MTAPD provides official notices, policy excerpts, investigatory reports, and deposition testimony to explain the rules Ariz violated and how the disciplinary inquiry was conducted. Ariz's effort to re-litigate this disciplinary proceeding in this action is swinging hard at the wrong pitch. The 40-

---

[1] It is hard for this Court to believe that Ariz could confuse the events involving an accident he had in Times Square while on duty driving a radio motor patrol car with a fender bender he had in his personal vehicle at some other time and place. (See Pl.'s 56.1, ¶¶ 160–162.)

10

hour discipline was upheld by an independent arbitrator under the collective bargaining agreement.

Finally, the May 2018 medical leave issue occurred at least <u>five months</u> after any protected activity. It is undisputed that Ariz's "letter of instruction" was considered to be "training," and <u>not</u> discipline with any implication for hours, pay, benefits, or assignments. Ariz's conjecture that the letter of instruction could have an adverse effect on his employment in the future is pure speculation. See <u>Brophy v. Chao</u>, 2019 WL 498251, at *6 (S.D.N.Y. Feb. 7, 2019) ("[T]he fear of future penalties that do not come to fruition is insufficient to establish an adverse employment action for purposes of a retaliation claim."). And while Ariz tries to parlay the denial of medical confinement leave itself into a distinct retaliatory action, he introduces no evidence as to how this application bore any temporal connection to his protected activity, or how he was treated differently than anyone else. For all of these reasons, Ariz's Title VII and NYSHRL retaliation claims are dismissed.

    C. <u>Hostile Work Environment</u>

Ariz also asserts that Defendants subjected him to a hostile work environment. "[T]he standard for establishing a hostile work environment is high." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003). To defeat summary judgment, a plaintiff must "produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Rivera v. Rochester Genesee Reg'l Transp. Auth.</u>, 743 F.3d 11, 20 (2d Cir. 2014). The conduct must be both "objectively severe and pervasive . . . [to] a reasonable person," as well as "subjectively . . . hostile or abusive [to the plaintiff]." <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007). A plaintiff must also demonstrate that the

11

hostility stems from "membership in a protected category." Bliss v. MXK Rest. Corp., 220 F. Supp. 3d 419, 423 (S.D.N.Y. 2016) (citation omitted).

To support his claim, Ariz points to two race-based comments by a coworker and unspecified "microaggressions." (Pl.'s 56.1, ¶ 52.) But "[o]ne or two isolated uses of racially insensitive language are rarely sufficient, but rather, the plaintiff must demonstrate a <u>steady barrage</u> of opprobrious racial comments." Morrison v. United Parcel Serv., Inc., 2019 WL 109401, at *3 (S.D.N.Y. Jan. 4, 2019) (emphasis added) (citation and quotation marks omitted). The record reflects no such conduct. And since Ariz never reported his coworker's comments, there is no basis to impute liability either to the MTAPD or Beahan. See Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106–07 (2d Cir. 2011) (holding that an employer is not liable for a coworker's harassment under Title VII unless the plaintiff demonstrates "that the employer either provided no reasonable avenue for complaint or knew of the harassment and did nothing about it"); Marchuk v. Faruqi & Faruqi, LLP, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015) (an employer is not liable under the NYSHRL unless the employer "encouraged, condoned, or expressly or impliedly approved" the conduct). Accordingly, Ariz's hostile work environment claims under Title VII and the NYSHRL are dismissed.

  D. § 1981 Discrimination

Ariz brings a claim for race discrimination in violation of § 1981, which prohibits public actors from discriminating on the basis of race in the making and enforcement of employment contracts. 42 U.S.C. § 1981(a). But Ariz's claims fare no better under this standard. With respect to his claim against the MTA—in essence construed as a Monell claim, see Duplan v. City of N.Y., 888 F.3d 612, 621 (2d Cir. 2018)—there is absolutely no evidence that any discrimination occurred subject to "a discriminatory practice of municipal officials [that]

was so persistent or widespread as to constitute a custom or usage with the force of law." Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2014). As for Beahan individually, there is no evidence that he had any role in rejecting Ariz's applications to become a detective. In fact, the record reveals that Beahan actually endorsed one of Ariz's applications to be promoted to detective. (Pl.'s 56.1, ¶ 24.) Accordingly, Ariz's § 1981 claim is dismissed.

III. NYCHRL Claims

Ariz brings failure to promote, retaliation, and aiding and abetting claims under the NYCHRL. The NYCHRL is "given an independent liberal construction," Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (citation omitted), in light of the statute's "uniquely broad and remedial purposes," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted).[2]

A plaintiff alleging discrimination under the NYCHRL "need only demonstrate by a preponderance of the evidence that [he] has been treated less well than other employees because of [his race]." Mihalik, 715 F.3d at 110 (quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)). As recounted earlier, Ariz's evidence of discrimination is nonexistent. And "[t]he standard under the NYCHRL is liberal, but not boundless . . . ." LeBlanc v. United Parcel Serv., 2014 WL 1407706, at *13 (S.D.N.Y. Apr. 11, 2014).

As for Ariz's retaliation claim, the NYCHRL inquiry is "broader than its federal counterpart." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010). But while the NYCHRL's lenity allows for a broader definition of retaliatory actions, it does not

---

[2] As a threshold matter, Defendants assert that Public Authorities Law § 1266(8) exempts the MTA from liability under the NYCHRL. However, they concede that "[t]here are no binding Court of Appeals cases that are on point for the question of whether this state statute exempts the MTA from local employment law claims under the NYCHRL." (See ECF No. 69.) For that reason, and because Ariz's NYCHRL claims may be dismissed on their merits, this Court does not address that argument.

13

relieve a plaintiff of the burden to establish a prima facie case and create a triable issue of fact. See Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 791 (N.Y. App. Div. 2013). In addition to the various deficiencies in his prima facie case, Ariz introduces no evidence to show that Defendants' nonretaliatory reasons for the decisions at issue were pretextual. And as discussed earlier, there can be no supervisory or aiding and abetting liability without an underlying violation. Accordingly, the NYCHRL claims against the MTA and Beahan are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted and this action is dismissed. The Clerk of Court is directed to terminate the motion pending at ECF No. 45 and to mark this case as closed.

Dated:   June 26, 2019
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.